854 P.2d 1162

**TUCSON MECHANICAL CONTRACTING, INC.; Lloyd Construction Co., Inc.; and Clyde Smith General Contractors, Inc., Plaintiffs–Appellants,**

v.

**ARIZONA DEPARTMENT OF REVENUE; Paul Waddell, in his official capacity as Director of the Arizona Department of Revenue, Defendants–Appellees.**

No. 1 CA–TX 91–0039.

Court of Appeals of Arizona, Division 1, Department T.

Dec. 29, 1992.

Review Denied July 7, 1993.

transaction privilege tax falls upon the purchaser of prime contracting services and thereby violates the federal government's constitutional immunity from state taxation when the federal government acts as a purchaser. We also consider whether the Arizona Department of Revenue, in enforcing the transaction privilege tax, systematically discriminated against in-state contractors in its audit selection process and thereby violated their right to equal protection of the law. We find no constitutional violation.

## I.

The three appellants (Taxpayers) are licensed Arizona contractors. The Arizona Department of Revenue (Department) audited each of them for various periods between 1983 and 1987 and assessed unpaid transaction privilege taxes against them on their gross income from federal contracts. The Taxpayers paid the assessed amounts under protest. After exhausting their administrative remedies, the Taxpayers commenced these actions in the Arizona Tax Court seeking refunds and declaratory relief.

Following a three day trial, the tax court ruled for the Department on the Taxpayers' claim that the transaction privilege tax is unconstitutional as applied to contracting income from federal government projects. The court also held that the Department had not discriminatorily enforced the tax.

The Taxpayers timely appealed. We have jurisdiction pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") § 12–2101.B. The appeal is assigned to Department T of this court pursuant to A.R.S. § 12–120.04.G.

Durazzo & Eckel, P.C. by Neal A. Eckel, Tucson, for plaintiffs-appellants.

Grant Woods, Atty. Gen. by Patrick Irvine, Asst. Atty. Gen., Phoenix, for defendants-appellees.

## OPINION

McGREGOR, Judge.

The primary issue in this appeal is whether the legal incidence of Arizona's

## II.

Arizona levies a transaction privilege tax on those doing business within the state, "measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales or gross income, as the case may be, as prescribed in this article." A.R.S.

§ 42–1306.A. The statutory scheme specifies the tax basis for each of the seventeen business classifications on which the tax is imposed, *see* A.R.S. §§ 42–1310.01 through 42–1310.18, and establishes the tax rate applicable to each classification. A.R.S. § 42–1317.

This litigation concerns the "prime contracting" classification, which is governed by A.R.S. § 42–1310.16. The tax base for this classification is sixty-five percent of gross proceeds of sales or gross income derived from the business of prime contracting. A.R.S. § 42–1310.16.B. Unique to the prime contracting classification is A.R.S. § 42–1310.16.G.,[1] which provides:

> Every person engaging or continuing in this state in the business of prime contracting or dealership of manufactured buildings shall present to the purchaser of such prime contracting or manufactured building a written receipt of the gross income or gross proceeds of sales from such activity and shall separately state the taxes to be paid pursuant to this section.

Arizona's statutory scheme does not impose the requirement that a purchaser be provided a receipt separately stating the tax to be paid upon any classification other than prime contracting.

Unlike liability for property taxes, which arises from the affirmative act of the state or county government,[2] liability for transaction privilege taxes arises automatically when a taxpayer engages in taxable business activity in Arizona. In other words, transaction privilege taxes, including the prime contracting tax, are self-assessed. Taxpayers must file periodic returns, with remittances of taxes due, on forms provided by the Department. A.R.S. § 42–1322. To encourage taxpayers to return and pay transaction privilege taxes, the statute authorizes the Department to audit selected taxpayers' returns and records. A.R.S. § 42–117.

## III.

### A.

The basic principle that the supremacy clause of the United States Constitution prohibits states from directly taxing the federal government has been long established. *See McCulloch v. Maryland,* 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819); United States Constitution, Art. VI, cl. 2. While the principle is simple to state, its application "has been marked from the beginning by inconsistent decisions and excessively delicate distinctions." *United States v. New Mexico,* 455 U.S. 720, 730, 102 S.Ct. 1373, 1380–81, 71 L.Ed.2d 580 (1982). To obviate the confusion caused by earlier decisions, the United States Supreme Court "return[ed] to the underlying constitutional principle," *id.* at 733, 102 S.Ct. at 1382, and held:

> [T]ax immunity is appropriate in only one circumstance: when the levy is on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned.

*Id.* at 735, 102 S.Ct. at 1383. The Supreme Court recently again summarized the modern theory of intergovernmental tax immunity:

> [T]he States can never tax the United States directly but can tax any private

1. The text of current A.R.S. § 42–1310.16.G was found in A.R.S. § 42–1310.02 (1984) during the first part of the audit period in this case. A.R.S. § 42–1310.02 (1984) was repealed by 1985 Ariz. Sess.Laws ch. 298, § 11. Its text was simultaneously enacted as A.R.S. § 42–1308.D (1985).

A.R.S. § 42–1308 (1985) was repealed by 1988 Ariz.Sess.Laws ch. 161, § 1. Section 4 of the same act reenacted the substance of A.R.S. § 42–1308.D (1985) as A.R.S. § 42–1310.17.E. 1989 Ariz.Sess.Laws ch. 132, § 20 renumbered A.R.S. § 42–1310.17 as A.R.S. § 42–1310.16.

A.R.S. § 42–1310.17.E accordingly became A.R.S. § 42–1310.16.E.

1991 Ariz.Sess.Laws ch. 176, § 8 and ch. 290, § 2 amended A.R.S. § 42–1310.16 in ways not pertinent to this litigation. As a result of these amendments, the text of former A.R.S. § 42–1310.16.E was redesignated as A.R.S. § 42–1310.16.G. *See* 1991 Reviser's Note, A.R.S. § 42–1310.16 (Supp.1991–92). To assist the reader and researcher, we refer to the subsection by its current designation.

2. *See* A.R.S. §§ 42–201 through 42–354.

parties with whom it does business, even though the financial burden falls on the United States, as long as the tax does not discriminate against the United States or those with whom it deals.... A tax is considered to be directly on the Federal Government only "when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities."

*South Carolina v. Baker*, 485 U.S. 505, 523, 108 S.Ct. 1355, 1366–67, 99 L.Ed.2d 592 (1988) (citations omitted); *see also New Mexico*, 455 U.S. at 733–38, 102 S.Ct. at 1382–85; *Washington v. United States*, 460 U.S. 536, 540–44, 103 S.Ct. 1344, 1347–50, 75 L.Ed.2d 264 (1983).

■ These Supreme Court decisions establish that intergovernmental tax immunity does not result "simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy," *New Mexico*, 455 U.S. at 734, 102 S.Ct. at 1382, because "the state tax falls on the earnings of a contractor providing services to the [federal] Government," *id.*, or "because the tax is paid with Government funds...." *Id.* at 735, 102 S.Ct. at 1383. Indeed, the Court has abandoned the "notion that the economic—as opposed to the legal—incidence of the tax is relevant...." *Id.* at 735 n. 11, 102 S.Ct. at 1383 n. 11.

Therefore, Arizona's transaction privilege tax on prime contractors doing business with the federal government does not violate the doctrine of intergovernmental immunity unless the tax falls directly on the federal government, falls on an instrumentality indistinguishable from the federal government, or somehow discriminates against the government or a private party with which it does business.

**B.**

The Taxpayers contend that Arizona's transaction privilege tax falls directly on the federal government whenever the government purchases prime contracting services. Acknowledging that in most instances the legal incidence of Arizona's transaction privilege tax falls on the seller, the Taxpayers argue that the language of A.R.S. § 42–1310.16.G changes the legal incidence of the tax. They assert that, because a prime contractor must furnish his customer with a written receipt separately stating the transaction privilege taxes to be paid, the statute effectively compels the prime contractor to collect the tax from its customers, resulting in the legal incidence falling on the customer. The Taxpayers find support for their argument in *United States v. California Bd. of Equalization*, 650 F.2d 1127 (9th Cir.1981), aff'd, 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 157 (1982). They assert that, like the California statute invalidated in that decision, the Arizona statute effectively exerts "economic compulsion" on prime contractors to collect the tax from their customers.[3] We disagree.

In *California Bd. of Equalization*, the court considered California statutes[4] that permitted the taxpayer to deduct from his taxable gross receipts or gross income all amounts he collected from his customers as sales tax reimbursement but allowed no similar deduction if the seller chose to retain the economic burden of the tax. Sustaining the district court's declaration that the California sales tax was unconstitutional as applied to gross receipts under feder-

---

**3.** The combined effect of *Washington v. United States*, 460 U.S. 536, 103 S.Ct. 1344, 75 L.Ed.2d 264 (1983) and *South Carolina v. Baker*, 485 U.S. 505, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988) may bar a constitutional challenge to a state tax affecting the federal government when the challenge relies upon the "economic compulsion" test. Because we conclude the tax at issue does not fall within the economic compulsion test, however, we do not reach this constitutional issue. *State v. Yslas*, 139 Ariz. 60, 63, 676 P.2d

1118, 1121 (1984) (supreme court will not determine constitutional issues unless necessary to determine merits of actions); *Nunez v. Arizona Milling Company*, 7 Ariz.App. 387, 389, 439 P.2d 834, 836 (1968) (court of appeals will avoid constitutional decision when other legal principles control).

**4.** California Revenue and Taxation Code §§ 6012 and 6051 (West Supp.1980).

al contracts, the United States Court of Appeals for the Ninth Circuit stated:

> Despite the facial neutrality of [California Civil Code] Section 1656.1,[5] *the strong economic incentive created by Section 6012 all but compels the lessor to collect the tax from the lessee. In sum, the California sales tax scheme manifests a legislative intent that the lessee pay the sales tax. It places the legal incidence of the tax on the United States and, therefore, violates the United States' constitutional immunity from state taxation.*

650 F.2d at 1132 (emphasis added); *accord United States v. State of Michigan,* 851 F.2d 803 (6th Cir.1988) (invalidating Michigan sales tax as applied to federal credit unions because Michigan regulations required taxpayers to include sales tax as part of price, and statute denied exclusion of tax from gross proceeds of sales unless taxpayer collected sales tax from purchaser directly).

■ The Arizona statutes in effect before this litigation arose resembled the California statutes invalidated in *California Bd. of Equalization.*[6] In the wake of that decision, the legislature amended Arizona's statutes effective May 2, 1984. 1984 Ariz. Sess.Laws ch. 335, §§ 1 and 3. Unlike the California statutes, amended A.R.S. § 42–1302.A.1 now excludes the amount of the transaction privilege tax from a taxpayer's gross income regardless of whether the taxpayer passes on or absorbs the tax. Accordingly, under current Arizona law, separately stating the tax does not increase

the amount the taxpayer owes. Further, contrary to the Taxpayers' argument, the requirement that the taxpayer "separately state the taxes to be paid pursuant to this section" is equally consistent with the seller's absorbing the taxes as with passing them through to the purchaser. *Cf. California Bd. of Equalization,* 650 F.2d at 1132 n. 6, examples 1 and 2. The Arizona transaction privilege taxation statutes create no economic compulsion to shift the tax to the purchaser, and no ground similar to that identified in *California Bd. of Equalization* exists for holding that the statutes manifest a legislative intent for the purchaser to pay the tax.

Because Arizona's tax does not fall directly on the federal government and the statutory scheme does not compel the prime contractor to shift the legal incidence of the tax to its purchaser, we conclude the tax does not violate intergovernmental tax immunity.

## IV.

### A.

The Taxpayers next contend that the Department discriminatorily enforced the prime contracting tax and therefore violated their right to equal protection of the law. U.S. Const. amend. XIV. They assert that the Department in effect singled out Arizona-based contractors for enforcement "while out-of-state contractors by and large escape[d] the tax."

---

5. Cal.Civil Code § 1656.1(a) provided: "Whether a retailer may add sales tax reimbursement to the sales price of the tangible personal property sold at retail to a purchaser depends solely upon the terms of the agreement of sale."

6. A.R.S. § 42–1302.A.1 (1982) excluded from gross income, gross receipts and gross proceeds of sales:

The taxes imposed by this chapter ... and sales or transaction privilege taxes imposed by municipalities in this state, *if the person upon whom the tax is imposed establishes to the satisfaction of the department that the tax has been added to the sale price and not absorbed by him, but* in no event shall the person upon whom the tax is imposed, when an added charge is made to cover the tax levied

by this article, remit less than the amount so collected to the department.

(Emphasis added.) Similarly, A.R.S. § 42–1310.02 (1980), the remote predecessor of A.R.S. § 42–1310.16.G, provided:

Every person engaging or continuing within this state in the business of prime contracting or dealership of manufactured buildings, as defined by § 42–1301 shall present to the purchaser of such prime contracting or manufactured building a written receipt of the gross income or gross proceeds of sale from such activity and shall separately state *the additional charge made to cover* the taxes levied pursuant to § 42–1310, paragraph 2 and pursuant to § 42–1317, subsection A.

(Emphasis added.)

The trial court determined that, during the period at issue, the Department lacked sufficient personnel to audit every transaction privilege tax return. The court described the Department's audit selection process as "haphazard at best" and found that some auditors in the Tucson office incorrectly perceived that they could enhance their income by generating revenue as a result of their audits. The court also found, however, that the Department had no departmental policy of excluding out-of-state contractors from being audited. In fact, while the court recognized that the auditors considered out-of-state audits more difficult to conduct and delinquent taxes from out-of-state contractors harder to collect, the court found that the Department routinely conducted out-of-state audits and collected delinquent taxes from out-of-state contractors. The court concluded that the Department neither employed inherently invidious standards in selecting taxpayers for audit nor deliberately distinguished between in-state and out-of-state contractors in enforcement.

### B.

■ To establish their claim that the Department denied them equal protection, the Taxpayers must show the Department systematically and deliberately discriminated against them. *See Duhame v. State Tax Comm'n,* 65 Ariz. 268, 282, 179 P.2d 252, 261 (1947). In an analogous context, our supreme court has stated:

> [B]efore a court will interfere, it must be clearly shown that assessments which are unequal are the result of systematic and intentional conduct—in the sense that the inequality would thereby be deliberately created. The annotator in 76 A.L.R.2d at 1077, Incomplete Equalization Program, pointed out:
>
> > " * * * if one is to give full faith and credit to certain expressions encountered in the cases, the question of violation of constitutional right is largely one of the presence or absence of actual intent to discriminate, despite the fact of substantial, and in some instances great, inequality in taxation

necessarily resulting from only partial application of new values."

*Security Properties v. Arizona Dep't of Property Valuation,* 112 Ariz. 54, 57, 537 P.2d 924, 927 (1975); *accord McCluskey v. Sparks,* 80 Ariz. 15, 291 P.2d 791 (1955).

■ The Taxpayers' bid for reversal on their discriminatory enforcement theory fails for three reasons. First, they point to nothing from the record demonstrating that any significant quantifiable disparity actually exists between the proportion of out-of-state prime contractors who do federal contracting work in Arizona and are audited by the Department and the proportion of in-state prime contractors who do such work and are audited.

Second, the tax court's findings fall far short of supporting the conclusion that the Department engaged in systematic conduct through which it deliberately created the asserted inequality between the treatment of out-of-state and in-state contractors. At most, the court's findings support the view that an unspecified proportion of the Department's auditing activities during the audit period was to some extent affected by misinformation and inferior managerial control, with unspecified results. As we stated in an analogous situation in *Hibbs v. Calcot, Ltd.,* 166 Ariz. 210, 218, 801 P.2d 445, 453 (App.1990):

> Calcot's evidence at best suggests that the Department has been insufficiently thoroughgoing in enforcing a statutorily appropriate policy of classifying commercial properties according to their use. To establish unreasonable discrimination requires greater proof than this. In *United States v. Wilson,* 639 F.2d 500, 505 (9th Cir.1981), the court recognized that tax authorities must "practice some degree of selectivity in deploying their limited enforcement resources." Though that court addressed a question of selective tax prosecution, its comment applies equally to questions of classification enforcement. In this case, Calcot's evidence does not support an inference that the classification of its property was a product of intentional or arbitrary discrimination. *Hillock v. Bade,* 22 Ariz.

App. 46, 53, 523 P.2d 97, 104 (1974), aff'd, 111 Ariz. 585, 535 P.2d 1302 (1975). No impermissible discrimination has been shown.

Third, the Taxpayers' reliance upon *County of Maricopa v. North Central Development Co.*, 115 Ariz. 540, 566 P.2d 688 (App.1977) is misplaced. In *North Central Development*, the court considered the effect of the Maricopa County Assessor's decision to assess only those partially completed buildings with which deputy assessors were personally familiar, when faced with a direction to value and tax all partially completed buildings by the end of the year. The court found systematic, intentional discrimination that deliberately caused tax inequality. As a result of that discrimination, the Maricopa County Assessor failed to assess property taxes against a specific group of taxpayers and effectively changed those taxpayers' statutorily-established tax liability. *Id.* The court therefore granted relief to the taxpayers.

In contrast, this case involves not the valuation and assessment of property taxes imposed by affirmative act of the government, but rather the Department's audit and enforcement of self-assessed transaction privilege taxes. The difference between assessment and enforcement is critical. The Department is obligated to value and assess all property in a like manner; the Department is not statutorily charged with auditing and enforcing transaction privilege tax payments against all prospective taxpayers. *See Hibbs*, 166 Ariz. at 218, 801 P.2d at 453 (tax authorities must be selective in using limited enforcement resources). Here, the record indicates that the Department lacked sufficient staff to verify self-assessed tax payments for all businesses covered by the transaction privilege tax system and therefore exercised its discretion to select some taxpayers for audit. "The fact that one taxpayer is subjected to an audit and assessment and that another might have been but was not, cannot establish a denial of equal protection absent a showing that the State's action was based upon an unjustifiable standard, such as race, religion or some other arbitrary classification." *Radiofone Corp. of*

*New Jersey v. Director*, 4 N.J.Tax 420, 431 (N.J.Tax Ct.1982) (citations omitted).

The trial court expressly found no systematic policy of discrimination and no evidence showing the Department's manner of selecting taxpayers for audit relied upon inherently invidious standards. We will sustain the trial court's factual determinations unless they are clearly erroneous or unsupported by credible evidence. *See Federoff v. Pioneer Title & Trust Co. of Arizona*, 166 Ariz. 383, 388, 803 P.2d 104, 109 (1990); *Lee Development Co. v. Papp*, 166 Ariz. 471, 475, 803 P.2d 464, 468 (App. 1990). Because the record does not indicate those factual determinations are clearly erroneous, and in fact provides substantial support for the trial court's findings, we find no error.

### V.

The tax court correctly held that A.R.S. § 42–1310.16.G, as applied to prime contractors' gross income from federal contracts, does not violate the United States' constitutional immunity from state taxation. The tax court correctly concluded that the Department's transaction privilege tax enforcement practices did not unconstitutionally discriminate against Arizona prime contractors in favor of out-of-state prime contractors.

Affirmed.

GERBER, P.J., and JACOBSON, J., concur.