867 P.2d 861

**ALEASCO, INC.**

v.

**MARICOPA COUNTY; Arizona Department of Revenue.**

**No. TX 92–01751.**

Tax Court of Arizona.

Jan. 7, 1994.

Brown & Bain, P.A. by Craig W. Soland, Phoenix, for plaintiff.

Newmark Irvine Macpherson & Migray, P.A. by Francis Migray, Phoenix, for defendant Maricopa County.

Arizona Atty. Gen.'s Office by Michael F. Kempner, Phoenix, for defendant Arizona Dept. of Revenue.

## OPINION

SCHAFER, Judge.

The main issue in this case is whether the county assessor may audit a taxpayer's prior years' personal property statements and assess taxes that were not paid because of the taxpayer's failure to properly report its property. If he may, there are further issues to answer: (1) may taxes be assessed for those years when the assessor did not demand the list of personal property provided for in A.R.S. § 42–222 but the taxpayer filed one anyway (though incorrect); (2) when personal property is exempt from sales tax may a sales tax nevertheless be imputed in determining the value of the property; and (3) what is the definition of "year of discovery" in A.R.S. § 42–236(D), which allows the assessor to recapture all escaped taxes for the three years preceding the discovery.

The taxpayer, Aleasco, Inc., rented construction equipment used in the construction of the Waddell Dam. It began business in Maricopa County in 1987 and hired Ralph Klein, a professional, experienced Arizona property tax consultant, to prepare and file its Arizona personal property tax statements. Mr. Klein prepared and filed personal property tax lists, Form 82520s, for tax years 1988 through 1991. The property lists for years 1988, 1989 and 1991 were voluntarily filed by Aleasco without a demand from the Maricopa County Assessor (the Assessor). Aleasco received a demand from the Assessor to file a list for tax year 1990. Each year Aleasco improperly reported its property for tax purposes by prorating only the depreciated cost of each item according to the number of days it was actually used on the job site during the year.

On October 25, 1990, and November 6, 1990, Dan McGuire, an auditor/appraiser for the Valuation Audit Division of the Assessor's office, visited the Waddell Dam site in order to determine whether any of Aleasco's property had not been reported for property tax purposes. On November 7, 1990, the Assessor sent an audit demand letter to Aleasco informing it of the Assessor's intention to audit Aleasco's property lists for the years 1987, 1988, 1989 and 1990. The letter also made a formal demand for all books and records containing information regarding Aleasco's property located in Maricopa County.

From November 1990 through April 1992, Mr. McGuire made several attempts to contact Mr. Gene Sacco, the individual Aleasco listed as the person to contact regarding the audit.[1] Unsuccessful in his attempts to obtain the necessary information in Arizona, Mr. McGuire eventually conducted the audit May 27 through 29, 1992, in Washington. The audit was completed in August of 1992. The Assessor assessed, and Aleasco timely paid under protest, additional taxes of $606,926.87 for years 1988 through 1991, and penalties and interest of $861,836.16, for a total of $1,468,763.03.[2] The tax portion of the

---

1. Although Aleasco offers no explanation for its failure to make the requested information available in Arizona prior to Mr. McGuire's travelling to Washington to conduct the audit, the Court was not presented with any evidence which would indicate any guile on Aleasco's part.

2. In a letter confirming the Washington audit dates, the Assessor confirmed that the audit would cover the 1988 through 1991 tax years. The record contains no explanation of when the audit period was changed from the 1987 through 1990 period originally given to Aleasco in the November 7, 1990, audit notice. The parties do

assessment was based upon (1) the difference between the taxes paid on the prorated value of the assets and the taxes due on the value of the assets without any proration, and (2) the taxes on the value of assets either not included on the property lists or improperly listed as non-assessable motor vehicles.

Aleasco claims the Assessor had no authority to audit the prior years' property lists filed voluntarily and to impose additional taxes on property reported in those prior years. Alternatively, Aleasco argues that if the additional assessment is allowed to stand, the Assessor made several errors in calculating the amount of tax, penalties and interest due, and erred by including amounts from 1988 in the assessment. The Assessor[3] disagrees, arguing that it had authority to both audit the prior years' lists and to assess the taxes not paid, including those for 1988.

This Court agrees with the Assessor so far as the Assessor's authority to audit and assess past taxes, and as to the inclusion of 1988. However, the Court finds the Assessor erred in its imputation of sales tax into the valuation of certain equipment and in its imposition of certain penalties and interest. Additionally, the Assessor erred by including 1991 in the audit and additional assessment.

## ANALYSIS

### I. Authority to Audit and Assess Back Taxes

#### A. Authority to Audit

Section 42–223 gives the Assessor the power to audit.

*Every list filed with the assessor may be subject to audit. Upon completion of an audit or upon discovery of property which has not been reported, any property found to have escaped taxation shall be liable for the amount of taxes due determined pursu-*

ant to § 42–236, subsection D, plus a penalty equal to ten per cent of such amount.

A.R.S. § 42–223(C) (emphasis added).

When interpreting a statute, this Court will first look at the language to be interpreted; when that language is clear the Court need look no further for guidance. *Rio Rico Properties v. Santa Cruz County,* 172 Ariz. 80, 834 P.2d 166 (1992). Here, the statute is clear.

Aleasco argues two things to show that the Assessor has no authority to audit past years' property lists and assess additional taxes. First, it relies on the Court of Appeals decision in *In re Westward Look Development Corp.,* 138 Ariz. 88, 673 P.2d 26 (1983) for the proposition that "the Assessor may impose back taxes only where property has wholly escaped assessment and taxation in any amount." Aleasco argues *Westward Look* applies to personal property and therefore bars any assessment of back taxes even where the taxpayer improperly reported its property resulting in an underpayment of taxes.

This Court need not decide whether *Westward Look* applies to personal property. *Westward Look* dealt with whether an assessor may correct its own omission or error by revaluing property and assessing taxes on improvements the assessor failed to value in prior years. That is not this case. This case involves an audit and additional assessment to remedy an omission or error by the taxpayer, not the assessor. Thus, *Westward Look* is inapposite.

Second, Aleasco argues an assessor's power to audit should not extend to those lists filed voluntarily without a request. But there is no support for such a limitation in the statutes. Section 42–223, subsection C, expressly allows the Assessor to audit "*every list filed*" with the Assessor. The only requirement is that the list have been filed. Here, Aleasco admits it filed property lists

---

not raise an issue regarding the change in audit period, but the Court notes this so the record is clear as to the period actually audited.

**3.** The Arizona Department of Revenue was also named as a defendant in this action and has responded to Aleasco's motion for summary judgment mainly by incorporating those arguments made by Maricopa County. For clarity in this opinion, both the Department and the Maricopa County Assessor will be referred to as "the Assessor" since their positions are virtually identical.

each year from 1988 through 1991. Consequently, the Assessor had authority to audit them.

### B. Authority to Assess Back Taxes

■ Arizona's unsecured personal property tax scheme does not require self-reporting like the income tax scheme or privilege tax scheme. *Tucson Mechanical Construction, Inc. v. Arizona Department of Revenue,* 175 Ariz. 176, 177, 854 P.2d 1162, 1163 (App. 1992); A.R.S. § 43–301. However, once the assessor requests a list of property or the taxpayer voluntarily files a list, there is a duty to *correctly* report all personal property subject to taxation. A.R.S. §§ 42–223(A), 236(A) and (D). Then, as previously noted, the Assessor has the power to audit any lists to ascertain whether property was correctly reported and that no property escaped taxation. A.R.S. § 42–223.

■ Once an audit is completed, and property is found to have escaped taxation, an assessor may collect back taxes in accordance with section 42–236(D) or (E). A.R.S. § 42–223(C). The applicable subsection here is D which provides:

> Except as provided in subsection E any property found by the assessor to have escaped assessment in any year is liable for the taxes for the year in which the discovery was made and for any escaped taxes in the three years immediately preceding the year of discovery....

A.R.S. § 42–236(D).

Aleasco argues that once property has been listed and reported (at any value), and taxes assessed and paid, the property has not "escaped taxation." If that were correct a taxpayer could systematically undervalue its property, pay the taxes assessed on the improper value, and escape any liability for the proper amount of taxes. That is clearly not the design of the statutes.

Both sections 42–223(C) and 42–236(D) use the term "escaped" to define what property the assessor is looking for when performing an audit. *The Compact Edition of the Oxford English Dictionary* (1971) at page 893 defines the word "escape" as "to succeed in avoiding (anything painful or unwelcome)." Using that plain definition, when property is either undervalued by the taxpayer or not reported such property has "escaped" taxation since either the whole or a portion of its value succeeded in avoiding taxation.

■ Here, Aleasco improperly prorated the value of its personal property and reported the properties' values at only a portion of their true values.[4] For those days the equipment was not rented, no value was attributed to the equipment and therefore, no value was reported on Aleasco's property lists, causing a significant portion of the properties' values to be left unreported—and thus "escaped." The Assessor is entitled to assess back taxes on that portion which escaped taxation. In addition, Aleasco had items of property not listed at all or improperly listed as non-assessable. The Assessor is also entitled to assess back taxes on the value of those escaped items.

### C. Year of Discovery

■ Once an assessor has determined that property has escaped taxation, taxes may be imposed for the year of discovery and back taxes may be imposed for "any escaped taxes in the three years immediately preceding the year of discovery." In determining the years for which back taxes may be imposed, the parties offer different definitions of "year of discovery." The Assessor argues the year of discovery is the year the Assessor became cognizant of the escape. Aleasco argues it is the year the taxpayer is notified that property has escaped. The Court agrees with the Assessor.

---

4. A.R.S. § 42–601.01 allows retailers or wholesalers to report personal property which is periodically leased or rented from their inventory on a prorated basis for ad valorem tax purposes. A.R.S. § 42–601.01(A). The property taxes are levied by prorating the value of the property for the number of days the property is leased or rented. A.R.S. § 42–601.01(B). However, persons primarily engaged in the business of renting personal property are expressly prohibited from using section 42–601.01 A.R.S. § 42–601.01(E). It is not disputed that Aleasco falls within the class of persons expressly prohibited from using the proration method of reporting since Aleasco's primary business in Arizona is renting equipment.

Applying a plain reading of the statute, section 42–236(D), "discovery" means nothing more than obtaining knowledge for the first time. *The Compact Edition of the Oxford English Dictionary*, 745 (1971). The Assessor may obtain knowledge of or discover an escape in any number of ways, including an audit. The Assessor may later verify the escape through various means, including an audit. However, the year of discovery is not necessarily the year of the audit since the Assessor may have knowledge of the escape prior to the actual audit. Such is the case here.

Here, the Assessor admits it "initially discovered" Aleasco was improperly prorating its leased property in 1990. More to the point, the Assessor states that it was "cognizant" of the escape in November 1990 when it sent its audit demand letter. Additionally, the Assessor acknowledges that completion of the audit field work in 1992 does not change its year of initial discovery. The plain reading of the statute, when coupled with the Assessor's admission that it was cognizant of the escape in 1990, pinpoints 1990 as "the year of discovery." Therefore, the Assessor could properly impose taxes for 1990 (as the year of discovery) and back taxes for 1989, 1988 and 1987 as the three years preceding the year of discovery.[5] As to the 1991 tax year, section 42–236(D) does not provide an avenue for the Assessor to impose taxes for years *after* the year of discovery. Consequently, since 1991 was after the year of discovery, those portions of the back tax assessment attributable to 1991 are improper and must be refunded.

## II. Valuation Including Sales Tax Figures

■ In calculating values for Aleasco's property, the Assessor imputed sales tax on those items of equipment which were tax exempt when purchased. This was improper.

To support its argument that sales tax must be added to the mix of factors in determining the value of the property, the Asses-

sor principally relies on the California case of *Xerox Corp. v. County of Orange*, 66 Cal. App.3d 746, 136 Cal.Rptr. 583 (1977). However, by relying on the *Xerox* case the Assessor ignores two pertinent facts: First, this Court recently issued an opinion declining to follow *Xerox* and determined the imputation of sales tax is improper in determining value when a sale was tax exempt. *See Waddell v. Mayo Foundation for Medical Education & Research*, 176 Ariz. 178, 180, 859 P.2d 801, 803 (Tax 1993). Second, the *Xerox* court noted that it was dealing with a "normal sale in a normal market situation" and not with a sale with a "special circumstance," like "immunity from state taxation" which is the situation in this case. *Ibid.* Therefore, the *Xerox* case is inapplicable.

When the purchase of property is exempt from sales tax, as is the case here, adding a sales tax figure to the taxpayer's original cost when valuing the property is improper. *Mayo, supra*, 176 Ariz. at 180, 859 P.2d at 803. Thus, Aleasco is entitled to a revaluation of its property and a recalculation of the resulting tax for years 1988, 1989 and 1990, using the properties' original cost or purchase price which might not include sales tax.

## III. Penalties

The Assessor imposed four separate penalties against Aleasco under section 42–223, subsections C and D, section 42–236(C), and section 42–252(B). The propriety of each of those penalties will be reviewed separately.

## A. A.R.S. § 42–223(C)

■ The Assessor imposed a 10% penalty under subsection C of section 42–223 which states:

Every list filed with the assessor may be subject to audit. *Upon completion of an audit* or upon discovery of property which has not been reported, *any property found to have escaped taxation shall* be liable for the amount of taxes due determined pursu-

---

5. In the November 7, 1990, audit notice, 1987 was included in the Assessor's audit list. However, it does not appear that any back taxes were imposed for 1987, or even that 1987 was actually audited.

ant to § 42–236, subsection D, plus a *penalty equal to ten per cent of such amount.*

A.R.S. § 42–223(C) (emphasis added).

Under subsection C of section 42–223, once an audit has been performed and property is found to have escaped taxation, imposition of a 10% penalty is appropriate. Here, it is undisputed that an audit was performed by the Assessor and that it discovered certain property listed by Aleasco had wholly or partially escaped taxation in prior years. Therefore, imposition of the 10% penalty pursuant to subsection C of A.R.S. § 42–223 was proper.

**B. A.R.S. § 42–223(D)**

The second penalty the Assessor asserts as a proper penalty was imposed under subsection D [6] of section 42–223. That subsection provides:

The assessor shall require a list to be prepared by the taxpayer for property valued pursuant to §§ 42–601 and 42–601.01. The taxpayer must file the list within forty-five days after the receipt thereof. *Failure to prepare and deliver the list shall result in a penalty of an additional ten per cent* added to the value of the property for the property tax year.

A.R.S. § 42–223(D) (emphasis added).

■ The penalty imposed by subsection D of section 42–223 is applicable only if the taxpayer fails to prepare and deliver a list of property within forty-five days after such is required by the assessor. Here, the Assessor only "required" or requested a list in 1990. It is undisputed that Aleasco prepared and delivered the 1990 list within the forty-

five day period. Those lists voluntarily filed in 1988 and 1989 [7] were not requested by the Assessor and therefore, not subject to the late filing penalty under the statute.[8] Thus, Aleasco is entitled to a full refund of the penalty amount assessed under this subsection.

**C. A.R.S. § 42–236(C)**

■ The third penalty the Assessor imposed was pursuant to subsection C of section 42–236 which provides:

If the assessor believes that any person has not returned a *full* and *complete* list of all property in his possession or control, he may make such investigation as he deems necessary to ascertain the extent and value of the property. The *cost of the investigation* shall be a charge against the county, but *if the assessor finds more property than is returned in the list, the cost shall be assessed as a penalty* against the property so found and shall be collected at the time the tax is collected.

A.R.S. § 42–236(C) (emphasis added).

It is undisputed the Assessor audited Aleasco and found property which was not fully and completely listed on Aleasco's property lists. Not only was property reported at a fraction of its actual value, some property was left off the lists entirely or improperly classified as non-assessable. Thus, the imposition of the investigation costs under section 42–236(C) was proper.[9]

**D. A.R.S. § 42–252(B)**

■ The Assessor also assessed a penalty

---

6. In its moving papers Aleasco discusses the penalty for failure to file imposed under subsection A of section 42–223. However, it appears to the Court that the penalty was actually imposed under *subsection D, not subsection A, of section 42–223.*

7. Due to the Court's ruling that 1991 was improperly included in the additional assessment, only the timeliness of the 1988 and 1989 lists are relevant.

8. The Assessor argues that when Mr. Klein picked up the personal property forms, Form 82520s, in 1989, 1990 and 1991 the Assessor

"expected" them to be filled out and filed. Therefore, the Assessor argues, it had made a demand for the personal property lists. The Court does not find that merely because a taxpayer chooses to pick up blank forms from the Assessor that the Assessor has then made a "demand" or "request" sufficient for a late filing penalty to be assessed.

9. The Assessor imposed the cost of investigation penalty authorized by A.R.S. § 42–236(C) in the amount of $3,860.00, computed as follows:

| | |
|---|---|
| Fixed fee | $ 40.00 |
| 191 Hours at $20/hr | $3,820.00 |
| | $3,860.00 |

of \$606,927.00 under section 42–252(B).[10] That section provides:

> Any property *knowingly* concealed, removed, transferred or misrepresented *by the owner or agent thereof* to *evade taxation* shall, upon discovery, be liable for the amount of taxes due determined pursuant to section 42–236, subsection D, plus *a penalty equal to the amount of taxes due* for the year in which the discovery was made.

A.R.S. § 42–252(B) (emphasis added).

■ Section 42–252(B) requires the Assessor to establish: (1) Aleasco or its agent, here Mr. Klein, (2) acted "knowingly," (3) with an intent to "evade" taxes. Summary judgment is not appropriate when an issue raised involves a person's intent or motives. *Hay v. Duskin,* 9 Ariz.App. 599, 455 P.2d 281 (App.1969); *Christy v. Hoke,* 127 Ariz. 169, 618 P.2d 1095 (App.1980). Here, the facts are in dispute as to the knowledge and reliance of Aleasco and Mr. Klein. Summary judgment is not appropriate on this penalty.

## IV. Interest

■ The Assessor calculated interest due at the rate of 16% under section 42–608, which provides for the imposition of interest on delinquent taxes. That assessment was improper.

Section 42–608 provides:

> Not later than the second Monday in each month the county treasurer shall have the unsecured personal property tax roll of the preceding month available, at which time the taxes spread on the roll shall be due and payable. Such taxes shall be considered delinquent thirty days thereafter. Delinquent taxes shall bear interest at the rate of sixteen per cent per year simple....

When the Assessor assesses escaped taxes and adds them to the tax roll the taxes will be delinquent thirty days after the county treasurer publishes the unsecured personal property roll. A.R.S. § 42–608. Even though additional taxes are owed, however, there are no "delinquent" taxes until the taxes are added to the roll, the roll is published *and* the taxpayer fails to pay the taxes within thirty days.

Here, the additional assessment was made in November of 1992. According to the tax bill, the delinquent date for the additional assessment was December 9, 1992. Aleasco paid the taxes on December 1, 1992, prior to the delinquency date. Thus, the delinquency rate of 16% is not applicable.

## CONCLUSION

The legislature placed the onus upon the taxpayer to correctly list his property. A taxpayer who improperly values his property may not avoid his true tax liability merely because the assessor did not audit the list prior to the taxpayer paying those taxes assessed using the taxpayer's improper list. Rather, the Assessor has the power to audit those lists filed in prior years in order to determine if property has escaped and the extent of such property. Further, once the Assessor discovers escaped property, back taxes may be assessed for the three years preceding the year of discovery—the year the Assessor becomes cognizant of the escape.

The imposition of penalties comprised of both the cost of investigation and ten per cent of the amount determined to have escaped taxation are proper when a taxpayer improperly lists its property. However, for the Assessor to properly impose a ten per cent late filing penalty under section 42–223(D) the Assessor must have actually requested or demanded a list of property; such a penalty may not be based on a voluntary filing. The imposition of the delinquency rate of 16% interest is proper only where the taxes listed on the rolls are not timely paid. The delinquency rate may not be utilized simply because taxes are assessed as "escaped" taxes.

---

10. If the imposition of the penalty under this section is determined to be proper, the penalty is only allowable up to the amount of taxes due for "the year in which the discovery was made," not for the entire amount of taxes due under section 42–236(D). The Assessor improperly imposed a penalty equal to the entire amount of escaped taxes, \$606,927.00, rather than limiting it to the amount of those taxes due for 1990, the year of discovery.

IT IS ORDERED granting in part and denying in part Plaintiff's Motion for Summary Judgment.

IT IS FURTHER ORDERED denying Defendants' Cross–Motion for Summary Judgment.

This opinion is not a final, appealable judgment; other orders will follow. *See Devenir Associates v. City of Phoenix,* 169 Ariz. 500, 821 P.2d 161 (1991).