NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CITY OF PHOENIX, et al., *Plaintiffs/Appellees/Cross-Appellants*,

*v.*

ORBITZ WORLDWIDE INC., et al., *Defendants/Appellants/Cross-Appellees*.

Nos. 1 CA-TX 16-0016; 1 CA-TX 16-0018
(Consolidated)
FILED 9-6-2018

---

Appeal from the Arizona Tax Court
Nos. TX2014-000470; TX2014-000471; TX2014-000472; TX2014-000473;
TX2014-000474; TX2014-000475
(Consolidated)
The Honorable Christopher T. Whitten, Judge

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**

---

COUNSEL

Snell & Wilmer, L.L.P., Phoenix
By Barbara J. Dawson, Andrew M. Jacobs, Rebekah Elliott
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

Jones Day, Dallas, Texas
By Deborah Sloan
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

Kelly Hart & Hallman, LLP, Fort Worth, Texas
By Bryan T. Davis
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

Freeborn & Peters, LLP, Chicago, Illinois
By Jeffrey A. Rossman
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

Schneider Wallace Cottrell Konecky Wotkyns, LLP, Scottsdale
By Jeffrey R. Finley
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Wright Welker & Pauole, PLC, Phoenix
By Scott G. Andersen
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Crongeyer Law Firm, P.C., Atlanta, Georgia
By John W. Crongeyer
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Bird Law Group, P.C., Atlanta, Georgia
By Alexandria E. Seay, Kristen L. Beightol
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Steptoe & Johnson, LLP, Phoenix
By Patrick Derdenger, Bennett Evan Cooper
*Counsel for Amicus Curiae Arizona Tax Research*

Arizona Attorney General's Office, Phoenix
By Scot G. Teasdale
*Counsel for Amicus Curiae Arizona Department of Revenue*

Van Cott & Talamante, PLLC, Phoenix
By Ryan J. Talamante
*Co-Counsel for Amicus Curiae American Society of Travel Agents*

American Society of Travel Agents, Inc., General Counsel, Alexandria, Virginia
By Peter N. Lobasso
*Co-Counsel for Amicus Curiae American Society of Travel Agents*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Acting Presiding Judge Peter B. Swann and Judge Randall M. Howe joined.

---

**B E E N E**, Judge:

¶1        Orbitz Worldwide Inc. and other travel companies (collectively the "online travel companies," or "OTCs") appeal the superior court's partial grant of summary judgment to the City of Phoenix and other cities ("Cities"), holding the OTCs are brokers under the Phoenix City Code ("Code")[1] and, thus, subject to transaction privilege tax on their sales of hotel rooms.  The Cities cross-appeal the court's partial denial of that summary judgment, which barred the Cities from assessing such taxes and penalties against the OTCs before 2013.  For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2        The facts in this case are not in dispute.  The OTCs operate websites that advertise travel services and allow customers to reserve and pay for hotel rooms.  The OTCs do not own any hotels.  Instead, they employ a merchant model, under which the OTCs contract with hotels to list rooms available for rent on their websites.

¶3        On an OTC's website, customers reserve hotel rooms by providing their personal information, length of stay, and payment information to the OTC.  The OTC provides the customer with a total price, with two line items: the "Reservation Rate" or "Nightly Rate," and the "Taxes and Fees" or "Tax Recovery Charge and Service Fees."  However, neither line item is further itemized. The "Reservation Rate"—effectively the retail rate of the room—consists of the room rental rate set by the hotel plus an additional amount the OTC retains for its services.  The Reservation Rate does not delineate the amount the hotel retains versus the amount the OTC retains.  The second line-item, the Taxes and Fees, includes the tax rate

---

[1]        In their briefs, the Cities and Orbitz reference the Model City Tax Code.  Because Phoenix is the named Appellee and the Phoenix City Code and the Model City Tax Code are not substantively different, we refer to the Phoenix City Code throughout this decision.

the hotel later remits to the city as a privilege tax and an additional service fee paid to the OTC, undisclosed to the customer.

¶4        The OTC appears as the merchant of record on the customer's credit card. The OTC handles the customer's financial and customer service concerns until the customer arrives at the hotel. If the customer does not keep a reservation and fails to cancel, the OTC sometimes keeps all of the money from the transaction, including the tax. The customer directly pays the hotel only for incidentals during the stay.

¶5        After a customer's stay, the hotel typically invoices the OTC for the net room rate and tax the hotel owes on that amount. The hotel then pays tax to the city on the amount it receives from the OTC. The OTC does not pay to the city any tax on its service fees, and the city does not receive tax on the money the OTC keeps.

¶6        To illustrate, assume an OTC contracts with a hotel in a city with a combined 10% occupancy tax. The OTC and the hotel agree to a net rate of $80. The OTC, then, sells the right to occupy the room to a traveler for $100, plus $10 taxes and service fee. After the traveler's stay, the hotel invoices the OTC for $80, plus the 10% tax of $8. The hotel remits the $8 to the city, and the OTC keeps the remaining $22.

¶7        In 2014, the Cities issued business activity privilege tax assessments to the OTCs for a review period of June 2001 to April 2009. The Cities argued that the OTCs were engaged in taxable activities under the Code §§ 14-444 and -447 for the privilege of engaging in the business of operating hotels, or alternatively, for acting as brokers for hotels. The OTCs sought redetermination of the Cities' assessments, arguing that the OTCs are not subject to the tax because they 1) do not operate hotels and are not hotels; and 2) are not brokers.

¶8        The Hearing Officer agreed with the OTCs, finding that the OTCs are not engaged in the business of operating a hotel and are not brokers because they do not act for hotels in the operation of the hotel. Also, the Hearing Officer found that, even if the OTCs were brokers under the regulation, the taxable portion of the transaction is only the net amount paid to the hotel, for which audits showed the Cities received remittance.

¶9        The Cities appealed the Hearing Officer's ruling to the superior court and filed a motion for summary judgment, which was partially granted and partially denied. The superior court concluded: 1) the OTCs did not own or operate hotels; 2) the OTCs "clearly and unambiguously fall within the definition of 'broker'" under the Code

because "the hotel uses the OTC as its agent to obtain business – in short, as a broker;" 3) the Cities' "broker" position constituted "a new interpretation or application" under the Code, and the Cities could, thus, only assess taxes prospectively. *See* Code § 14-542.

**¶10** The OTCs timely appealed the superior court's rulings. The Cities cross-appealed the ruling barring retrospective collection of the tax. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶11** Entry of summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We determine *de novo* whether any genuine issue of material fact exists and whether the trial court erred in applying the law, and will uphold the court's ruling if correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996). We construe the evidence and reasonable inferences in the light most favorable to the non-moving party. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002).

**¶12** This case involves issues of statutory interpretation that we review *de novo*. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195 (App. 1990); *State v. Gallagher*, 205 Ariz. 267, 269, ¶ 5 (App. 2003). City charters and ordinances are construed by the same rules and principles that govern construction of statutes. *Rollo v. City of Tempe*, 120 Ariz. 473, 474 (1978).

**¶13** "[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *State ex rel. Montgomery v. Harris (Shilgevorkyan)*, 234 Ariz. 343, 344, ¶ 8 (2014) (citation omitted). "We construe the statute as a whole, and consider its context, language, subject matter, historical background, effects and consequences, as well as its spirit and purpose." *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 9 (2004) (quoting *State ex rel. Ariz. Dep't of Revenue v. Phx. Lodge No. 708, Loyal Order of Moose, Inc.*, 187 Ariz. 242, 247 (App. 1996)) (internal quotations and marks omitted). Statutes imposing taxes are liberally construed in favor of taxpayers and against the government. *Id.* at ¶ 10.

## I. The OTCs are brokers engaging in a taxable activity under Phoenix City Code Section 14-444.

¶14        In section 14-444, the Code imposes a tax on "the gross income from the business activity of every person engaging or continuing in the business of operating a hotel charging for lodging."  Code § 14-444. The OTCs are included under this section because: a) they are brokers; b) they provide services generally performed in operating a hotel; and c) their service fee is part of the entire amount a customer must pay for the lodging—the taxable gross income.

### A. The OTCs are persons under section 14-444 because they are brokers.

¶15        The Cities argue the OTCs are "persons" under this ordinance because they are hotel room brokers. The OTCs counter the definition does not apply to them because they do not own or operate hotels.  The Code generally defines "person[s]" as any "individual, firm, partnership, joint venture, association, corporation, estate, trust, receiver, syndicate, *broker*, the Federal Government, this State, or any political subdivision or agency of this State."  Code § 14-100 (emphasis added).  The Code, then, specifically defines "broker" as "any person engaged or continuing in business who acts for another for a consideration in the conduct of a business activity taxable under this Chapter, and who receives for his principal all or part of the gross income from the taxable activity." Code § 14-100.  The superior court concluded that the OTCs "clearly and unambiguously fall within the definition of 'broker.'"  We agree.

¶16        Under the Code, the OTCs are brokers for the following four reasons: 1) they act for hotels by providing advertising, booking, and other hotel services; 2) they accept payment for their services from travelers; 3) they accept consideration for their services from hotels; and 4) they assist hotels with taxable hotel operations.

¶17        First, the OTCs act for hotels by advertising available rooms, soliciting customers, collecting customer information, processing payment, and handling certain aspects of customer service.  While the OTCs argue they merely provide information and services to travelers, they facilitate additional services to travelers by taking on numerous duties of the hotel during the booking process.

¶18        Second, the OTCs earn consideration for their actions in the form of service fees.  They argue they are not brokers under the Code because the *traveler* pays the fees in consideration for their services.  But the

Code does not specify who must pay the consideration, only that consideration is exchanged.

¶19 Third, the OTCs perform hotel operations, for which hotels exchange consideration. The OTCs claim customers pay their fees for the information compiled on their websites and ease in the booking process. However, advertising and booking are essential hotel operations that the OTCs assume. The OTCs, thus, receive consideration for acting on behalf of the hotel, as contemplated by the Code. *See* Code § 14-100. Additionally, hotels agree to take a smaller amount of revenue in OTC-facilitated transactions in exchange for the exposure to a wider customer base the OTCs provide. This loss in revenue, in exchange for services and access to customers, is also a form of consideration.

¶20 Fourth, although the OTCs argue they do not directly engage in business activities taxable under the Code, the taxable activity is furnishing hotel lodging to customers. Not only do the OTCs collect the entire amount of fees for lodging on behalf of hotels, but they also assume advertising, booking, and customer service duties for hotels.

### B. The OTCs provide services performed in the business of operating a hotel.

¶21 The OTCs correctly point out that they do not perform all of the functions involved in operating a hotel; however, defining brokers as those who perform *all* aspects of hotel operation is contrary to the Code's plain language. *See Harris (Shilgevorkyan)*, 234 Ariz. at 344, ¶ 8. Brokers are included as "persons" under § 14-444, and all "persons" must pay tax on the total amount of revenue they generate from hotel operations. The OTCs, as brokers, assume a number of duties hotels generally perform. Thus, brokers must pay tax on the income they generate from performing those operational duties. Applying the Code only to those who perform *all* operational functions of a hotel would render the broker definition superfluous. *See Phx. Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 244 (App. 1997) ("We presume that the legislature does not enact superfluous or reiterative legislation.").

### C. The entire amount the OTCs collect from a customer is the taxable gross income for the lodging transaction.

¶22 The OTCs contend the revenue they collect is not the gross income paid for hotel lodging; instead, the customer pays a certain amount for the hotel stay and a separate amount the OTC retains as a service fee. However, Code section 14-100.1 provides:

(a) For the purposes of proper administration of this chapter and to prevent evasion of taxes imposed, *brokers* shall be wherever necessary treated as taxpayers for all purposes, and shall file a return and remit the tax imposed on *the activity on behalf of* the principal. *No deduction shall be allowed for any commissions or fees retained by such a broker*, except as provided in Section 14-405, relating to advertising commissions.

(Emphasis added.)

¶23 The OTCs admit that the fees they collect are service fees. Although the OTCs argue that these fees are separate from the price customers pay for the right to occupy a hotel room, each consumer must pay the total amount the OTC charges, including service fees, to rent the room. The OTC's decision not to separately itemize service fees, but to label the hotel room's net rate plus the service fees as the "Reservation" or "Nightly Rate" on their customer invoices, further demonstrates that the entire amount is the price paid for lodging. Because customers must pay the entire combined amount to obtain future lodging at the time they book with the OTC, the entire amount they pay is the sales price for the lodging paid to the OTC on the hotel's behalf at the time of the sale. The Code does not provide a deduction for service fees retained by the OTCs. Thus, the entire sales price the OTC charges is the gross income for the lodging transaction and is taxable under § 14-444.

¶24 Our reasoning accords with decisions regarding the taxability of OTCs in other state and federal courts. In jurisdictions that require only hotel owners and operators to remit taxes on the revenues they receive, the OTCs' service fees have generally not been found taxable.[2] In jurisdictions that apply a tax to the entire cost of purchasing lodging, the OTCs' service fees have been found taxable.[3] For example, Baltimore changed its tax laws

---

[2] *See, e.g., Pitt Cty. v. Hotels.com, G.P., LLC*, 553 F.3d 308, 313 (4th Cir. 2009) (tax only imposed on hotel "operators"); *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 385 (6th Cir. 2009) (imposed tax on amounts charged by entities "doing business as . . . hotels"); *City of Columbus v. Hotels.com, L.P.*, 693 F.3d 642, 651 (6th Cir. 2012) (amount charged by hotel is taxable).

[3] *See, e.g., Travelscape, LLC v. S.C. Dep't of Revenue*, 705 S.E.2d 28, 32–33 (S.C. 2011) (OTCs' hotel transactions subject to tax upon gross proceeds); *Travelocity.com, L.P. v. Wyo. Dep't of Revenue*, 329 P.3d 131, 145, ¶ 55 (Wyo.

to reflect models that charge tax on the entire lodging transaction to successfully collect tax from the OTCs. Jaan Rannik, Note and Comment, *Locality v. Online Travel Company: Does the Bell Finally Toll for Quill Corporation v. North Dakota?*, 9 J. Bus. & Tech. L. 293, 297-98 (2014); *see also Mayor & City Council of Balt. v. Priceline.com Inc.*, 2012 WL 3043062 at *9 (D. Md. July 24, 2012) (mem. decision).

**¶25**　　　　The superior court correctly applied the law and summary judgment on this issue was appropriate.

## II.　The OTCs are not taxable entities under Phoenix City Code § 14-447.

**¶26**　　　　Unlike § 14-444, which specifically incorporates hotel room brokers as taxpayers, § 14-447 taxes "the gross income from the business activity of *any hotel* engaging or continuing within the City in the business of charging for lodging." (Emphasis added.)　The OTCs argue that § 14-447 taxes income received by hotels and does not apply to OTC activities. The Cities argue that § 14-447 taxes *all* entities receiving gross business income from furnishing lodging to customers.

---

2014) (as vendors, OTCs' markups are subject to sales tax); *City & Cty. of Denver v. Expedia, Inc.*, 405 P.3d 1128, 1138, ¶ 35 (Colo. 2017) (the OTCs' service fee is taxable as it is inseparable from the price of lodging).

¶27        While § 14-200 does define gross income broadly,[4] § 14-447's plain text limits the taxable income to business activities of *hotels*.  The Cities do not explain how § 14-200 overcomes § 14-447's limitation on hotel income only.  The Cities argue that § 14-447 institutes a tax on the entire consideration consumers pay for hotel rooms regardless of its later division.  If § 14-447 were to be read as broadly as the Cities suggest, however, the tax could be applied to the income of any business affiliated with the hotel industry.  We agree with the OTCs that the language of § 14-447 limits taxpayers to hotels renting lodging to customers.  It does not extend to brokers engaging in hotel operations, as reflected in other sections of the Code.

¶28        The superior court misapplied the law when it granted the Cities' motion for summary judgment as to the taxation provisions of § 14-447.  Therefore, we reverse the superior court's grant of summary judgment on this issue and remand for entry of judgment in favor of the OTCs.

### III.      The Cities did not advance a new interpretation of the Code.

¶29        In its summary judgment order, the superior court concluded the Cities are barred from assessing any tax, penalty, or interest retroactively, before 2013, because the Cities did not enforce the taxes prior to that year.  This conclusion is contrary to Code § 14-542(b)(2), which provides:

---

4        Pursuant to Code § 14-200(a), gross income includes:

(1) The value proceeding or accruing from the sale of property, the providing of service, or both.

(2) The total amount of the sale, lease, license for use, or rental price at the time of such sale, rental, lease, or license.

(3) All receipts, cash, credits, barter, exchange, reduction of or forgiveness of indebtedness, and property of every kind or nature derived from a sale, lease, license for use, rental, or other taxable activity.

(4) All other receipts, whether payment is advanced prior to, contemporaneous with, or deferred in whole or in part subsequent to the activity or transaction.

> If the Tax Collector *adopts a new interpretation or application* of any provision of this chapter or determines that any provision *applies to a new or additional category or type of business* and the *change in the interpretation or application* is not due to a change in the law . . . the Tax Collector shall not assess any tax, penalty or interest *retroactively* based on the *change* in interpretation or application.

(Emphasis added.)

**¶30**　　　　Adoption of a new interpretation requires a change from an old position because the "liability for transaction privilege taxes arises *automatically* when a taxpayer engages in taxable business activity in Arizona." *Tucson Mech. Contracting, Inc. v. Ariz. Dep't of Revenue*, 175 Ariz. 176, 178 (App. 1992) (emphasis added). While taxing authorities may audit select taxpayers to ensure compliance, privilege taxes are self-assessed. *Id.* Failure to collect a privilege tax does not render an unambiguous statute unenforceable and does not preclude the tax authority from seeking to collect those revenues in the future. *Miami Copper Co. Div., Tenn. Corp. v. State Tax Comm'n*, 121 Ariz. 150, 153 (App. 1978). The OTCs bear the burden of proving that the Cities changed their interpretation of the tax law. *See* Code §§ 14-370(a) and 14-400(c); *see also Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 582, ¶ 55 (1998) (the department can be estopped from collecting taxes if taxpayer proves the department held inconsistent positions).

**¶31**　　　　Here, the record shows no evidence that the Cities held positions contrary to the one they now advance. Therefore, the OTCs failed to demonstrate they qualify for an exclusion based on a change in the Cities' interpretation of the tax provisions. The OTCs also fail to demonstrate that their business is a new activity or category. Brokering hotel and travel services is not a new industry; although the OTCs provide these services through the internet, the nature of the services remains the same. The OTC's business activities are, therefore, not "new."

**¶32**　　　　We conclude that the superior court misapplied the law; dismissal of the Cities' motion for summary judgment was inappropriate as the Code allows the Cities to collect tax from previous years, when not barred by statutes of limitation. Because there was no change in the Cities' application or interpretation of the Code and the OTCs' business activities are not new, we reverse and remand for further proceedings consistent with this decision.

## CONCLUSION

**¶33** For the foregoing reasons, we affirm the OTCs' status as taxable hotel room brokers under § 14-444, but reverse the conclusion that the OTCs are taxable under § 14-447 and that the Cities may not assess tax, penalties, and interest before 2013. We remand for further proceedings consistent with this decision. We award the Cities their costs on appeal subject to compliance with Arizona Rule of Civil Appellate Procedure 21. We decline to award the Cities attorneys' fees on appeal pursuant to A.R.S. § 12-348.01 because this section limits recovery by a municipality to lawsuits involving dispute with another government entity.



AMY M. WOOD • Clerk of the Court
FILED: AA