IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

HUHTAMAKI, INC., *Plaintiff/Appellant,*

*v.*

MARICOPA COUNTY, *Defendant/Appellee.*

No. 1 CA-TX 21-0010
FILED 3-23-2023

---

Appeal from the Arizona Tax Court
No. TX2017-000542
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

---

COUNSEL

Dickinson Wright PLLC, Phoenix
By Dawn R. Gabel, Bennett Evan Cooper, Cameron Stanley
*Counsel for Plaintiff/Appellant*

Maricopa County Attorney's Office, Phoenix
By Joseph Branco, Courtney R. Glynn
*Counsel for Defendant/Appellee*

———————————————————

**OPINION**

Presiding Judge Brian Y. Furuya delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

———————————————————

**F U R U Y A**, Judge:

¶1        Huhtamaki, Inc. is a taxpayer who appeals from the Arizona Tax Court's entry of summary judgment in favor of Maricopa County (the "County") on Huhtamaki's tax code and Arizona Constitution Uniformity Clause claims. This appeal requires us to construe an exception within Arizona Revised Statutes ("A.R.S.") § 42-13302(A)(4)'s alternative calculation of limited property value for taxation purposes. Because the tax court correctly determined that this exception did not apply in this case, we affirm. We need not reach the uniformity issue because it cannot be addressed for the first time on appeal.

## FACTS AND PROCEDURAL HISTORY

¶2        Huhtamaki purchased six parcels of property (collectively, the "Property") in an industrial development within the City of Goodyear from Broadway Goodyear, LLC. The five parcels at issue in this case were contiguous and were formerly identifiable by parcel numbers assigned by the Maricopa County Assessor as ending in 943, 944, 945, 946, and 947, as shown in the diagram included below.



¶3 Three parcels, 946, 944, and 947, were located within a single tax area code south of the Broadway Road Alignment. The other two parcels, 943 and 945, were north of the Broadway Road Alignment and, although contiguous, were located within a different tax area code. Huhtamaki purchased all of parcels 943, 944, 946, and 947, but not all of parcel 945.

¶4 Because Huhtamaki purchased only part of parcel 945, seller Broadway Goodyear prepared and submitted a Minor Land Division, which it recorded with the County Recorder's Office after approval by the City.

¶5 The Minor Land Division created new legal descriptions and an associated map reflecting the reorganization of the six original parcels into three new lots, as depicted in the diagram above. Lot 1 was created by

combining parcels 943, 944, 946, and 947 with part of parcel 945. Lot 2 is the remainder of parcel 945 that Huhtamaki did not purchase. Lot 3, which is not at issue in this case, remained unchanged. Broadway Goodyear deeded Lots 1 and 3 to Huhtamaki while retaining the title to Lot 2.

¶6 After discovering the changes completed under this Minor Land Division, the Assessor amended its parcel map and assigned new parcel numbers to reflect the new legal descriptions and configurations effectuated by the Minor Land Division. Because Lot 1 straddles two tax area codes separated by the Broadway Road Alignment, the Assessor assigned it two parcel numbers, each corresponding to that portion of Lot 1 situated within the different tax area codes.

¶7 Because the Minor Land Division required both a split and various combinations involving the Property, the Assessor applied A.R.S. § 42-13302(A) to calculate the Property's 2018 limited property value ("LPV"). Using the statutory valuation methodology raised the Property's 2017 LPV of $19,452,848 to $32,512,450 in 2018 (a $13,059,592 increase), substantially increasing Huhtamaki's property tax obligation.

¶8 Huhtamaki filed suit, alleging the Assessor had improperly applied A.R.S. § 42-13302(A)(4). It argued the Assessor should have instead used the standard LPV calculation method of A.R.S. § 42-13301(A) because the Assessor's consolidation and then split of the parcels constituted "an action initiated by a governmental entity," an exception to the application of A.R.S. § 42-13302(A)(4). On cross-motions for summary judgment, the court ruled for the County, explaining the split and combination were initiated by the Minor Land Division instituted by Broadway Goodyear and Huhtamaki, not by government action. The court also rejected Huhtamaki's Uniformity Clause argument, finding that Huhtamaki had failed to sufficiently plead such a claim and that the LPV was consistent with LPVs of other properties to which A.R.S. § 42-13302(A)(4) had been applied.

¶9 Huhtamaki timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-2101(A)(1) and -170(C).

## DISCUSSION

¶10 We review de novo the grant of summary judgment in a tax case. *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198 (1995); *Qasimyar v. Maricopa Cnty.*, 250 Ariz. 580, 584 ¶ 6 (App. 2021). Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We also review de novo

issues of statutory interpretation and the court's application of tax law. *Home Depot USA, Inc. v. Ariz. Dep't of Revenue*, 230 Ariz. 498, 500 ¶ 7 (App. 2012); *see Qasimyar*, 250 Ariz. at 584 ¶ 6.

## I.  The Assessor Did Not Err in Applying A.R.S. § 42-13302(A)(4).

**¶11**          Arizona law provides two means of determining LPV. In most cases, a property's LPV is equal to "the preceding valuation year plus five per cent [sic] of that value," a methodology commonly referred to as "Rule A." A.R.S. § 42-13301(A). Application of Rule A moderates the taxation effects of sharp increases in a property's market value, provided there have been no changes to the property that affect its value.

**¶12**          Under certain enumerated circumstances, however, LPV must be calculated instead based on a percentage of the full cash value ("FCV") comparable to percentages of properties "of the same or a similar use or classification," a methodology commonly referred to as "Rule B." A.R.S. § 42-13302(A). One such enumerated circumstance invoking the application of Rule B occurs when a property is "split, subdivided or consolidated from January 1 through September 30 of the valuation year." A.R.S. § 42-13302(A)(4). But in 2007, the Legislature enacted an exception to the application of Rule B when a split, subdivision, or consolidation of property "result[ed] from an action initiated by a governmental entity." A.R.S. § 42-13302(A)(4); 2007 Ariz. Legis. Serv. Ch. 104 (S.B. 1553). If this exception applies, assessors must apply Rule A, even if a split, subdivision, or consolidation has occurred during these nine months of the valuation year.

**¶13**          In this appeal, Huhtamaki argues the Assessor initiated the tax parcel split and consolidation because neither Huhtamaki nor Broadway Goodyear requested that the Assessor split or consolidate the Property for tax purposes. Huhtamaki cites our decision in *Premiere RV & Mini Storage LLC v. Maricopa County*, arguing that because "there is no inherent significance in a change in ownership," the sale of the Property did not initiate a change in the tax parcels. *See Premiere RV*, 222 Ariz. 440, 445 ¶ 17 (App. 2009). *Premiere RV* holds that, in deciding when Rule B applies to a property split, "the acts of the Assessor . . . have significance" because only the Assessor can "create or deactivate parcels." *Id.* at 444 ¶ 16. Therefore, a "split" for the purposes of Rule B refers to the Assessor's administrative process. *Id.* Seizing on this language, Huhtamaki argues its purchase of the Property did not constitute a split or consolidation because the Assessor performed the split and consolidation by assigning new parcel numbers, and neither it nor Broadway Goodyear requested the Assessor to

take such an action. However, this argument mistakenly conflates the initiation of the split and combination process with its completion.

¶14 *Premiere RV* did not discuss the issue of whether an assessor's office triggers the application of Rule B's exception when it updates parcel numbers after a split, subdivision, or consolidation. The parties in *Premiere RV* did not dispute that a split had occurred. *Id.* at 444 ¶ 13. Further, *Premiere RV* did not consider or decide whether a split, subdivision, or consolidation "result[s] from an action initiated by a governmental entity." A.R.S. § 42-13302(A)(4). Indeed, at the time relevant to the *Premiere RV* decision, Rule B did not contain that exception. *Id.* at 443–44 ¶ 12 n.1 (comparing Rule B (2006) with Rule B (2007)). Nevertheless, in that context, we explained, "a consolidation occurs when the Assessor *completes* the activation and evaluation of the new parcel." *Id.* at 446 ¶ 22 (emphasis added). Therefore, *Premiere RV* clarifies that the administrative action in assigning new parcel numbers is what *completes* the process of a split, subdivision, or consolidation—not what *initiates* the process, contrary to Huhtamaki's argument.

¶15 Further, while the "consolidation process is not self-executing," such actions can and do originate from the actions of property owners. *See id.* (observing that "[c]onsolidation of property frequently involves an internal transaction with only one party—the common owner of multiple pieces of property" and reasoning that tax significance of such an act does not take place until the Assessor activates and values the new, larger parcel). This circumstance implicitly acknowledges and accepts that despite the necessity of government action in consummating and implementing splits, subdivisions, and combinations of property, private owners can, and frequently do, initiate such processes. If, as Huhtamaki argues, all splits, subdivisions, and combinations not expressly requested by owners constitute government-*initiated* action invoking Rule B's exception, then owners could substantially change the character, nature, and value of their property by their own actions and yet still avoid application of Rule B—an absurd result that would cause the exception to swallow the rule and render A.R.S. § 42-13302(A)(4) discretionary to property owners and all but meaningless. That is a proposition we must reject. *See In re Est. of Zaritsky*, 198 Ariz. 599, 603 ¶ 11 (App. 2000) (explaining we give meaning to each part of a statute and avoid rendering any of it "surplusage").

¶16 We instead give the statute's words their plain and ordinary meaning. *See S. Point Energy Ctr. LLC v. Ariz. Dep't of Revenue*, 253 Ariz. 30, 34 ¶ 14 (2022) (stating that courts "read words in context and effectuate the

plain meaning" of statutes, unless absurd). "Initiate," as it is commonly understood, includes meaning "to cause or facilitate the beginning of." *Initiate*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/initiate (last visited Mar. 15, 2023); *see also Chaparro v. Shinn*, 248 Ariz. 138, 141 ¶ 14 (2020) (observing "[a]bsent statutory definitions, courts apply common meanings and may look to dictionaries") (citation omitted). Thus, we hold that Rule B applies upon any split, subdivision, or combination of property not *initiated*—i.e., begun—by government action. This is true regardless of the necessity for any government action required or involved to complete them. A.R.S. § 42-13302(A)(4).

**¶17** Here, the parties do not dispute that Broadway Goodyear— not the Assessor—applied for the Minor Land Division, thereby initiating the process. Nor can the parties dispute that the boundaries of the Lots described in the Minor Land Division are not coextensive with the five relevant formerly-existing parcels. On these facts, the tax court properly concluded the Minor Land Division initiated the process that ultimately resulted in a split and various combinations of the Property. Having so concluded, the Minor Land Division triggered the application of Rule B.

**¶18** Moreover, as a practical matter, the Assessor also could not have applied Rule A. The Property's boundaries substantially changed after the Minor Land Division, which resulted in new parcels. As we explained in *Magellan South Mountain Limited Partnership v. Maricopa County*, 192 Ariz. 499, 503–504 ¶¶ 20, 24 (App. 1998):

> Parcel reconfiguration changes the dimensions of the parcel itself resulting in a different parcel . . . . Valuations that result from . . . parcel reconfiguration are . . . either first-time taxation of . . . property or removal of property previously taxed under an existing tax parcel number.

Thus, Lot 1, as a newly constituted parcel, had no baseline LPV from which the Assessor could have added five percent, and the Assessor must use Rule B to calculate the Property's LPV accurately.

**¶19** Huhtamaki contends that because taxpayers may share responsibility for paying taxes on shared parcels, there was no need for the Assessor to assign new tax parcels, and so the Assessor's unilateral decision to do so triggered Rule B's exception. *See* A.R.S. § 42-18057. But Huhtamaki's argument ignores that the Minor Land Division initiated the consolidation of the parcels in Lot 1 into one piece of property, thereby requiring the Assessor to acknowledge and record the creation of a new

parcel. Therefore, the reference to taxpayers' ability to allocate tax liabilities between them is not germane.

**¶20** Because the Minor Land Division described the Property as one piece of land, the sale initiated a split of parcel 945 and a consolidation of it and the other contiguous parcels into the new Lot 1. The court did not err in granting the County's motion for summary judgment.

## II. Huhtamaki Failed to Assert a Uniformity Clause Claim Correctly.

**¶21** Huhtamaki also contends the Assessor erred by imposing an LPV of 79% of the Property's FCV, which it claims is much higher than "comparable properties" with the same or similar use or classification. The court ruled that Huhtamaki failed to plead the Uniformity Clause claim adequately, and even if it did validly plead it, the argument would still fail because Huhtamaki did not present evidence the LPV percentage was disproportionately high when compared to LPV percentages of other properties that had likewise undergone minor land divisions. Huhtamaki argues this was error and that the sole consideration for comparison should be the properties' use or classification.

**¶22** The Uniformity Clause mandates that "all taxes shall be uniform upon the same class of property." Ariz. Const. art. 9, § 1. However, we need not address whether it erred by excluding evidence of properties with similar use or classification because the court was correct—Huhtamaki failed to raise a Uniformity Clause claim in its complaint. *See* Ariz. R. Civ. P. 8(a)(2) (a pleading must contain a statement "showing that the pleader is entitled to relief"). The complaint alleges the Assessor erred by applying Rule B, not that the ratio of the LPV as a percentage of the FCV violates the Uniformity Clause. Nor did the complaint include any reference to A.R.S. § 42-11005 as was required to contest the LPV amount. Having failed to adequately raise a Uniformity Clause claim, it is now waived. *See Cont'l Lighting & Contracting, Inc. v. Premiere Grading & Utils., LLC*, 227 Ariz. 382, 386 ¶ 12 (App. 2011) (explaining arguments not raised at the superior court are waived on appeal).

## CONCLUSION

¶23　　　　We affirm.

¶24　　　　Because it is not the prevailing party, we deny Huhtamaki's requests for its attorney's fees and costs.



AMY M. WOOD • Clerk of the Court
FILED:　AA