NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

5133 N CENTRAL, LLC, et al., *Plaintiffs/Appellants*,

*v.*

MARICOPA COUNTY, et al., *Defendants/Appellees*.

No. 1 CA-TX 22-0005
FILED 4-18-2023

Appeal from the Arizona Tax Court
No. TX2019-001719
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Mooney Wright Moore & Wilhoit, PLLC, Mesa
By Paul J. Mooney, Jim L. Wright, Paul Moore, Bart S. Wilhoit
*Counsel for Plaintiffs/Appellants*

Carden Livesay, Ltd., Mesa
By Roberta S. Livesay, Joshua W. Carden
*Counsel for Defendant/Appellee Maricopa County*

Arizona Attorney General's Office, Phoenix
By Jerry A. Fries, Lisa A. Neuville
*Counsel for Defendant/Appellee Arizona Department of Revenue*

---

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

---

**P A T O N**, Judge:

**¶1**        5133 N. Central, LLC, and 5115 N. Central, LLC, representing a class of property owners who held Class One assessed properties in Maricopa County in the 2018 tax year (collectively "Taxpayers"), challenged the valuation method used by the Maricopa County Assessor ("Assessor") to determine their tax liability.  The superior court granted summary judgment in favor of Maricopa County and the Arizona Department of Revenue ("ADOR" or "Department").  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In 2019, Taxpayers sued Maricopa County and ADOR, and argued the county's method of calculating the limited property value ("LPV") of their properties violated Arizona tax law.  Taxpayers sought a refund of taxes collected using the county's assessment method.  The superior court granted summary judgment in favor of Maricopa County and ADOR.  Taxpayers timely appealed.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1) and -2101(A)(1).

### DISCUSSION

**¶3**        We review de novo both the superior court's order granting summary judgment and its interpretation of our tax statutes.  *Qasimyar v. Maricopa Cnty.*, 250 Ariz. 580, 584, ¶ 6 (App. 2021).  Our primary goal in interpreting a statute is to effectuate the text.  *See James v. City of Peoria*, 253 Ariz. 301, 303, ¶ 9 (2002).  When statutory language is unambiguous, we apply it without resorting to secondary methods of interpretation. *Id.*

I.      Methods of establishing LPVs

**¶4**        Under Arizona's property taxation system, each county is responsible for levying and collecting taxes for the properties within its limits.  Every year, the county assessor must determine the full cash value

("FCV") of all real property within the county that is subject to taxation. A.R.S. § 42-13051(B)(2). In 2012, Arizona voters adopted Proposition 117, which amended Arizona's constitution to require that real property taxes be assessed based on the property's LPV rather than its FCV. *See* Ariz. Const. art. 9, § 18 (establishing LPV in subsection (3) though not using the term); *see also Qasimyar*, 250 Ariz. at 584, ¶ 9 (citing other relevant statutes and legislative authorities).

**¶5** Real property taxes are calculated by multiplying a property's LPV by an assessment ratio, which is dictated by statute based on the property's classification. *See Aileen H. Char Life Int. v. Maricopa Cnty.*, 208 Ariz. 286, 291, ¶ 8 (2004). The result is the property's assessed value, which, when applied to the relevant tax rate, determines the amount of property tax due. *See id.*

**¶6** There are two ways to calculate a parcel's LPV, depending on the property's status. *See Qasimyar*, 250 Ariz. at 584, ¶ 10. "Rule A" is the "general rule" and applies when there have been no significant changes to the property that would affect its value since the previous tax period. *See id.* Under Rule A, a property's LPV increases by 5% each year provided that the LPV never exceeds the property's current FCV. A.R.S. § 42-13301(A)–(B). Rule A "prevents rapid rises in [LPV] that might result from market increases." *Premiere RV & Mini Storage LLC v. Maricopa Cnty.*, 222 Ariz. 440, 442, ¶ 4 (App. 2009).

**¶7** "Rule B" properties are properties which have undergone modifications, omissions, or changes since the preceding tax year. *See* A.R.S. § 42-13302; *Premiere RV & Mini Storage LLC*, 222 Ariz. at 442, ¶ 4. Under Rule B, a property's LPV is determined "by reference to the value of comparable properties." *See id.* Specifically, the Legislature has directed county assessors to establish the LPV of Rule B properties "at a level or percentage of [FCV] that is comparable to that of other properties of the same or a similar use or classification." A.R.S. § 42-13302. The LPV established under Rule B is used to calculate the parcel's Rule A LPV in the following tax year. *See* A.R.S. § 42-13301.

**¶8** Until the 2018 tax year, nearly every county in Arizona used the same method, referred to as the "Ratio Aggregate Method," to calculate the Rule B Ratios. In 2018, Maricopa County adopted a different method for calculating Rule B Ratios, known as the "Ratio Average Method."

A.      Ratio Average Method

¶9          Under the Ratio Average Method, the county assessor calculates the ratio of LPV to FCV (LPV divided by FCV) of each Rule A property in a class. The assessor then adds those ratios together and divides that sum by the number of properties in the class. In other words, under the Ratio Average Method, the assessor calculates the Rule B ratio by averaging the LPV/FCV ratios of all similar Rule A properties.

B.      Ratio Aggregate Method

¶10          Under the Ratio Aggregate Method, the assessor establishes the Rule B Ratio by dividing the aggregate LPV of all the Rule A Parcels in a given class by the aggregate FCV of those same parcels.

C.      Example of Ratio Average Method and Ratio Aggregate Method

| Class X properties | FCV | LPV | RATIO (LPV/FCV) |
|---|---|---|---|
| 1 | $1,000,000 | $800,000 | 0.80 |
| 2 | $500,000 | $340,000 | 0.68 |
| 3 | $250,000 | $190,000 | 0.76 |

Sum:  $1,750,000          $1,330,000          2.24

¶11          Under the Ratio Average Method, the assessor would add the individual ratios of each Class X property (0.80 + 0.68 + 0.76 = 2.24) and divide that by the number of properties in the class (3), resulting in a Rule B Ratio of 75% (2.24/3 = 0.75).

¶12          Under the Ratio Aggregate Method, the assessor would divide the sum of the LPVs of the Class X properties ($1,330,000) by the sum of those properties' FCVs ($1,750,000), resulting in a Rule B Ratio of 76% ($1,330,000/$1,750,000 = 0.76).

¶13          Here, the parties agree that under the Ratio Aggregate Method, the LPV of Taxpayers' properties would have been calculated at 75% of FCV, but because the Assessor used the Ratio Average Method, their properties were calculated at 79% of FCV.

II.     The Ratio Average Method does not violate Section 42-13302.

¶14     Section 42-13302(A) provides that the LPV of Rule B properties shall be calculated at a "level or percentage of full cash value that is comparable to *that* of other properties of the same or a similar use or classification." (emphasis added). Taxpayers argue the term "that" in the statute refers to a single "level or percentage" (or ratio) of FCV that is uniform to all properties of the same or similar use or classification. But that uniform ratio does not exist: each Rule A property has a different individual LPV/FCV ratio.

¶15     Indeed, as demonstrated above, both methods produce a single Rule B Ratio, derived from the FCVs and LPVs of each Rule A property "of the same or a similar use or classification" that is "comparable" to the ratios of other similarly used or classified property. *See* A.R.S. § 42-13302. Both the Ratio Aggregate Method and Ratio Average Method use the same data in different ways to determine the Rule B Ratio.

III.    Assessors have discretion to choose different Rule B Ratio calculation methods.

    A.     Section 42-13302 does not require all county assessors to use the same method to calculate Rule B Ratios.

¶16     Taxpayers' argument that the Ratio Average Method is impermissible because it yields different results from the Ratio Aggregate Method is similarly unpersuasive. Section 42-13302(A) only requires assessors to establish an LPV for Rule B properties "at a level or percentage of [FCV] that is comparable to that of other properties of the same or a similar use or classification." That the Ratio Average Method may yield different results from the Ratio Aggregate Method does not render the Ratio Average Method illegal under the statute, which neither prescribes nor prohibits any method of calculating the LPV of Rule B properties.

    B.     Section 42-13002(A)(1) does not require the Department to ensure statewide uniformity of Rule B Ratio calculation methods.

¶17     At oral argument, Taxpayers argued that Section 42-13002(A)(1) requires county assessors throughout the State to use the same method of calculating Rule B Ratios. We disagree.

¶18     Section 42-13002(A)(1) provides that the Department shall "ensure that all property is uniformly valued for property tax purposes."

"Valuation" is defined, in relevant part, as the "limited property value that is determined for real or personal property." A.R.S. § 42-11001(18). The "uniformity" that the Department is tasked with ensuring, therefore, refers to how counties value—that is, determine the LPV of—Rule B properties. In other words, the uniformity in Section 42-13002(A)(1) is tied to how counties apply the Rule B Ratio rather than how they arrive at that ratio. Here, regardless of the method county assessors use to arrive at the Rule B Ratio, they uniformly apply that Ratio to calculate LPVs by multiplying the Rule B Ratio by the property's FCV.

**¶19** Further, Section 42-13002(A)(1) is ambiguous in that it does not specify the territorial limits within which property must be "uniformly valued." We thus resort to secondary methods of statutory interpretation to determine whether Section 42-13002(A)(1) refers to "uniformity" within a taxing authority's jurisdiction, or within the State. "Statutory provisions should be read in context to determine meaning," and we "consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance." *See State v. Ariz. Bd. of Regents*, 253 Ariz. 6, 12, ¶ 24 (2022) (citation omitted).

**¶20** We read Section 42-13002(A)(1) *in pari materia* with Article 9, Section 1 of the Arizona Constitution, which provides that "all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax." Accordingly, even if Section 42-13002(A)(1) required methodological uniformity in calculating Rule B Ratios, that uniformity is only required within the territorial limits of the county assessors' authority, which here is Maricopa County. *See* A.R.S. § 42-13051(A). All parties agree that the Maricopa County Assessor calculated and applied the Rule B Ratio uniformly for all Rule B properties in the county.

IV.    The Legislature did not impermissibly delegate authority to county assessors.

**¶21** Taxpayers next argue that permitting county assessors to calculate Rule B Ratios using the Ratio Average Method is an impermissible delegation of legislative power. In support of their argument, Taxpayers cite *Southern Pacific Company v. Cochise County*, 92 Ariz. 395 (1963), which states that the Legislature may not delegate to an official "the power to fix a rate of taxation according to a standard [and] also the power to prescribe the standard" because "a statute [giving] unlimited regulatory power to a . . . board or agency with no prescribed restraints offends the Constitution as a delegation of legislative power." *Id.* at 404.

¶22 As an initial matter, and as the Department points out, if it is an unlawful delegation of power for the Assessor to calculate LPVs using the Ratio Average Method, it is equally unlawful for it to calculate LPVs using the Ratio Aggregate Method because the Legislature has not prescribed either method. But here, as in *Southern Pacific*, the Legislature's delegation of power to county assessors is constitutionally permissible because "in no event can it be construed to give [county assessors] unlimited power to change the uniform method of assessment prescribed by the legislature." 92 Ariz. at 404.

¶23 Indeed, the Legislature did not give county assessors unfettered discretion to assess taxes on Rule B properties. Rather, the Legislature directed assessors to determine the LPV of Rule B properties at a rate "comparable to that of other properties of the same or a similar use or classification." A.R.S. § 42-13302(A). While Taxpayers would prefer that the authority delegated to the county assessor be further constrained, we will not construe the county assessor's role more narrowly than the statute directs.

V. The Department's use of the Ratio Aggregate Method in its Assessment Procedure Manual does not require every county assessor to use that method.

¶24 Taxpayers argue that the Department "teaches assessors to establish Rule B Ratios using the Aggregate Method" because the Department's Procedure Manual provides examples of the Ratio Aggregate Method and not the Ratio Average Method. But the legality of a Rule B Ratio calculation is determined by whether it complies with Section 42-13302, not the Department's manual. And as we explained above, the Ratio Average Method is legal because it comports with the statute. To the extent the examples the Department includes in its manual constitute its interpretation of what the statute requires, that interpretation is not binding authority. *See Maricopa Cnty. v. Viola*, 251 Ariz. 276, 279, ¶ 11 (App. 2021) (noting ADOR guidelines are "just that, guidelines, not formal regulations . . . ."). The final word on statutory interpretation belongs to the judiciary, not to administrative agencies. *See U.S. Parking Systems v. City of Phoenix*, 160 Ariz. 210, 211 (App. 1989).

¶25 Nevertheless, we agree with the superior court's determination that "even if the Manual was entitled to deference, the [Ratio Average Method] is consistent with the instructions included in the manual." In the Manual, the Department states that the Rule B Ratio is "determine[d] by using the ratio for properties in the same legal

7

classification or within the same property use code grouping" and is "based upon the relationship between the full cash and limited values of existing properties that are subject to Rule A limited value calculation." The Manual does not provide that the Ratio Aggregate Method is the *only* permissible method, and the Ratio Average Method is consistent with the Manual's guidance (and the language of Section 42-13302) that Rule B Ratios are determined "using the ratio[s] for properties in the same legal classification."

VI.  The 2018 Rule B Ratios did not result in illegal LPVs in subsequent years.

**¶26**  Taxpayers further contend that the "illegal LPVs set by the assessor have resulted in illegal LPVs in subsequent years." But as we have explained above, the LPVs set by the Assessor in 2018 complied with Arizona tax law, and the Assessor did not err in calculating the Rule B Ratios. Accordingly, because there was no initial error in the 2018 calculation for Rule B Ratios, there is also no resulting error for subsequent tax periods.

**CONCLUSION**

**¶27**  We affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA